UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES CASEY,

Plaintiff,

- v. –

WILLIAM GRANT AND SONS, INC., GRANT MCKENZIE, and GLENN GORDON,

Defendants.

Civil Action No. 1:26-cv-03700 (MMG)

**DEFENDANT WILLIAM GRANT & SONS, INC.'S ANSWER AND DEFENSES TO THE COMPLAINT**

Defendant William Grant & Sons, Inc. ("WG&S, Inc." or "Defendant") (incorrectly sued as "William Grant and Sons, Inc."), by its attorneys Littler Mendelson P.C., for its Answer and Defenses to the Complaint filed May 5, 2026 ("Complaint") by James Casey ("Plaintiff"), responds as follows:

## NATURE OF THE ACTION

1. WG&S hired Plaintiff in April of 2025 as its President and Managing Director for United States operations. On September 17, 2025, Mr. Casey sustained injuries in an Uber incident while returning from WG&S Hudson Distillery, after his vehicle was rear-ended by another automobile traveling in excess of the speed limit on the Taconic Parkway in New York.

RESPONSE: WG&S, Inc. admits the allegations in Paragraph 1 of the Complaint that it hired Plaintiff in April of 2025 as its President and Managing Director of its United States operations. WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1, and on this basis denies the same.

2. As a result of the accident, Mr. Casey sustained ligament damage in the neck as well as an injury to his lower back, which made it difficult for him to travel for a period, as travel appeared to exacerbate his back condition. After Plaintiff informed WG&S that he would need an accommodation related to his ability to travel due to his back injury, they terminated his employment on December 3, 2025, without cause and without engaging in the interactive process to determine whether an accommodation would allow him to continue working.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 2 of the Complaint, and on this basis

denies the same. WG&S, Inc. admits that it informed Plaintiff his employment was being terminated on December 3, 2025. Except as so stated, WG&S, Inc. denies the remaining allegations set forth in Paragraph 2.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this action under 28 U.S.C. § 1332 on diversity grounds.

RESPONSE: The allegations in Paragraph 3 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. admits that this Court has diversity jurisdiction over the claims pleaded as against WG&S, Inc.

4. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because the Corporate Defendants maintain their principal place of business in the County of New York, and this district is where a substantial part of the events or omissions giving rise to the claim occurred.

RESPONSE: The allegations in Paragraph 4 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. admits that its principal place of business is in New York City, but denies the remaining allegations in Paragraph 4 and avers that it is a New Jersey corporation.

**PARTIES**

5. Plaintiff is an individual residing in Fairfield County in the State of Connecticut.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, and on this basis denies the same.

6. At all relevant times hereinafter, Plaintiff suffered from ligament damage in his neck as well as an injury to his lower back after being in a car accident on September 17, 2025.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Complaint, and on this basis denies the same.

7. Casey's ligament damage and injury to his lower back qualify as a disability under both the NYSHRL and NYCHRL.

RESPONSE: The allegations in Paragraph 7 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 7.

8. At all relevant times hereinafter, WG&S was and is a licensed foreign corporation with its principal place of business in the county of New York.

RESPONSE: WG&S, Inc. admits it is a New Jersey corporation with its principal place of business in the county of New York, but otherwise denies the allegations of Paragraph 8.

9. At all relevant times herein, WG&S was Plaintiff's employer within the meaning of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

RESPONSE: The allegations in Paragraph 9 of the Complaint set forth legal conclusions to which no response is required. To the extent that a response is required, WG&S, Inc. admits the allegations in Paragraph 9.

10. At all relevant times hereinafter, WG&S was and is a foreign corporation with its principal place of business in the county of New York.

RESPONSE: The allegations in Paragraph 10 of the Complaint are a duplicate of those in Paragraph 8. WG&S, Inc. admits it is a New Jersey corporation with its principal place of business in the county of New York, but otherwise denies the allegations of Paragraph 10.

11. At all relevant times hereinafter, Gordon is the owner of WG&S.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 11 of the Complaint.

12. Upon information and belief, Gordon is a resident of the Bailiwick of Jersey, an autonomous, self-governing British Crown Dependency located in the English Channel near France.

RESPONSE: WG&S, Inc. admits upon information and belief the allegations in Paragraph 12 of the Complaint.

13. At all relevant times herein, Gordon was Plaintiff's employer within the meaning of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

RESPONSE: The allegations in Paragraph 13 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 13.

14. At all relevant times herein, Gordon has the power to, inter alia, hire and fire employees, establish and pay their wages, set their work schedules, determine their job duties and responsibilities, maintain their employment records, and/or otherwise have the authority to alter the terms and conditions of the employees' employment, including Plaintiff.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 14 of the Complaint.

15. Upon information and belief, McKenzie is an individual residing in London, England, in the United Kingdom.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 15 of the Complaint.

16. At all relevant times hereinafter, McKenzie is the CCO of WG&S and Plaintiff's direct supervisor beginning on or about December 2025.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 16 of the Complaint.

17. At all relevant times herein, McKenzie has the power to, inter alia, hire and fire employees, establish and pay their wages, set their work schedules, determine their job duties and responsibilities, maintain their employment records, and/or otherwise have the authority to alter the terms and conditions of the employees' employment, including Plaintiff.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 17 of the Complaint.

18. At all relevant times herein, McKenzie was Plaintiff's employer within the meaning of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

RESPONSE: The allegations in Paragraph 18 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations set forth in Paragraph 18.

**STATEMENT OF FACTS**

19. WG&S hired Mr. Casey as its President and Managing Director for United States operations, effective April 1, 2025.

RESPONSE: WG&S, Inc. admits the allegations in Paragraph 19 of the Complaint.

20. As part of his employment, Mr. Casey signed an offer letter outlining the specific terms and conditions of his employment with WG&S.

RESPONSE: WG&S, Inc. admits that Plaintiff signed an offer letter related to his employment with WG&S, Inc. and refers the Court to the contents of that document. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 20.

21. The offer stipulated that WG&S was required to provide Mr. Casey with a minimum of six months' advance notice of termination or to compensate him instead of such notice, except in cases where the termination was based on WG&S's "Good Faith" judgment that Mr. Casey had engaged in misconduct.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 21of the Complaint and refers the Court to the contents of that document.

22. In accordance with the terms of his offer, Mr. Casey commenced employment with WG&S on April 1, 2025.

RESPONSE: WG&S, Inc. admits the allegations in Paragraph 22 of the Complaint.

**Plaintiff's Discrimination Claims**

23. On September 17, 2025, Casey sustained injuries in an Uber incident while returning from WG&S Hudson Distillery, after his vehicle was rear-ended by another automobile traveling in excess of the speed limit on the Taconic Parkway in New York.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint, and on this basis denies the same.

24. On September 18, 2025, Casey reported the incident to his immediate supervisor, Soren Hagh, who served as the Global CEO for WG&S until December of 2025.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint, and on this basis denies the same.

25. After the accident. Casey began experiencing neck and back pain so severe that he was compelled to consult his physician on September 19, 2025.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint, and on this basis denies the same.

26. During this consultation, an MRI was conducted, the findings indicated that the plaintiff sustained ligament damage in the neck as well as an injury to his lower back.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint, and on this basis denies the same.

27. Casey was prescribed a steroid regimen and a skeletal relaxant, which he continues to be prescribed to the present day.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint, and on this basis denies the same.

28. Following his injury, Mr. Casey participated in the partner conference in Scotland from October 6th to October 9th with Mr. Glenn Gordon, Chairman and Owner of WG&S, and Mr. Soren Hagh, former CEO.

RESPONSE: WG&S, Inc. admits the allegations in Paragraph 28 of the Complaint that Plaintiff participated in a meeting in Scotland from on or about October 6, 2025 to October 9, 2025. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 28.

29. During this period, Mr. Casey experienced significant back pain, which necessitated standing during multiple presentations.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint, and on this basis denies the same.

30. Mr. Casey was compelled to cancel the scheduled golf outing with customers who had traveled to Scotland and depart early from a walking tour due to discomfort.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint, and on this basis denies the same.

31. After having canceled the golf outing, Gordon alleged that Plaintiff intentionally left the customers because he did not want to host them golfing, and that Plaintiff created a distraction by standing during the presentation.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 31 of the Complaint.

32. While in Scotland, Casey also disclosed his injury to Graeme Jenkins (Interim Co-CEO, CFO) and Doug Bagley (Interim Co-CEO, CCO).

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 32 of the Complaint.

33. On October 28, 2025, Gordon confirmed via email that he was aware of Plaintiff's injury.

RESPONSE: WG&S, Inc. admits that Mr. Gordon and Plaintiff had an email exchange on October 28, 2025 and refers the Court to the content of that document. Except as so stated, WG&S, Inc. denies the remaining allegations of Paragraph 33.

34. In meetings with Gordon on October 31, 2025, Plaintiff repeatedly had to stand due to discomfort from his injuries. Plaintiff and Gordon discussed his doctor's appointment and how he was doing.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 34 of the Complaint that Mr. Gordon and Plaintiff had meetings on October 31, 2025. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 34.

35. Plaintiff left the meeting, believing that Gordon did not comprehend that Plaintiff would need to accommodate his injuries and may need to adjust his travel.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief regarding the truth of the allegations set forth in Paragraph 35 of the Complaint, including but not limited to Plaintiff's "belie[fs]," and on this basis denies the same.

36. Gordon sent one more Teams message to Plaintiff a few days later, but thereafter ghosted Plaintiff by failing to respond to any of his emails.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 36 of the Complaint.

37. It was clear to Plaintiff that their relationship had changed once Gordon saw the extent of Plaintiff's injury, and that Plaintiff would require some accommodation relating to his travel.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Complaint, and on this basis denies the same.

38. Thereafter, WG&S required Mr. Casey to attend a corporate meeting in Switzerland from November 18th to 21st, 2025.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 38 of the Complaint that Plaintiff attended a corporate meeting in Switzerland between November 19th to 21st, 2025. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 38.

39. Once again at the corporate meeting, Mr. Casey experienced the same back issue.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 of the Complaint, and on this basis denies the same.

40. The facilitator, a non-WG&S employee, permitted Mr. Casey to sit at the end of a row at the back of the room so he could stand without disrupting the proceedings.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of the Complaint, and on this basis denies the same.

41. On November 20th, Mr. Casey was in such severe pain that he was compelled to leave the meetings early and return to the hotel.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Complaint, and on this basis denies the same.

42. Plaintiff returned at 6 pm for a meeting with Will Payne ("Payne"), interim global General Council, Steve Napier ("Napier") (HR), and Ken (Executive Board member), where Plaintiff discussed his travel challenges and the significant pain it caused him.

RESPONSE: WG&S, Inc. admits the allegations in Paragraph 42 of the Complaint that on November 20, 2025, at approximately 6 p.m. Plaintiff participated in a meeting with Will Payne, Steve Napier and Ken McKinlay. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 42.

43. Later that evening, Ms. Roxana Corha, the Chief Human Resources Officer, joined Mr. Casey for a drink in the hotel lobby bar.

RESPONSE: WG&S, Inc. admits the allegations in Paragraph 42 of the Complaint that on November 20, Ms. Roxana Corha met Mr. Casey in the hotel's lobby bar. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 43.

44. During this time, Mr. Casey conveyed to Ms. Corha that the flight had been very taxing for him and that he might be unable to travel for a period, as the travel appeared to be exacerbating his back condition.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 44 of the Complaint.

45. Plaintiff had a separate meeting with Mr. Payne on October 21 they talked at length about Plaintiff's accident issues and the need to figure out how to manage the pain and travel.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 45 of the Complaint.

46. On November 26, 2025, Mr. Casey sent an email to Ms. Teresa O'Meara, the EH&S Manager, and Ms. Traci Lashley, informing them that he had commenced physical therapy for injuries associated with the incident.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 46 of the Complaint that on November 26, 2025, Mr. Casey sent an email to Ms. Teresa O'Meara, EH&S Manager, and Ms. Traci Lashley, and refers the Court to the contents of that document. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 46.

47. On the morning of December 2, 2025, incoming Chief Executive Officer Grant McKenzie met with Mr. Casey. During the meeting, Mr. Casey detailed his medical condition and the accommodations necessary following his accident three months prior.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 47 of the Complaint that on December 2, 2025, Plaintiff had a meeting with Mr. McKenzie. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 47.

48. Mr. Casey attended his initial physical therapy session on December 3, 2025, which resulted in his arriving late at work.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Complaint, and on this basis denies the same.

49. After arriving late due to his physical therapy session, Mr. Casey was informed that WG&S would terminate his employment without cause, effective December 5, 2025.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 49 of the Complaint that on December 3, 2025, Plaintiff was informed that his employment with WG&S, Inc. was being terminated effective December 5, 2025. WG&S, Inc. lacks knowledge or information sufficient to form a belief regarding the truth of the allegation that "[a]fter arriving late due to his physical therapy session" and on this basis denies same. Except as so stated, WG&S, Inc. denies the remaining allegations set forth in Paragraph 49 of the Complaint.

50. As per the employment contract entered into between Casey and WG&S, WG&S agreed to provide Casey with a lump sum payment reflecting a severance of six months' salary.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 50 of the Complaint, and refers the Court to the content of the offer letter executed by WG&S, Inc. and Plaintiff.

51. The offer of severance from WG&S is an admission that WG&S had no "Good Faith" basis to believe Casey had engaged in misconduct before his termination.

RESPONSE: The allegations in Paragraph 51 of the Complaint constitute an argument by counsel to which no response is required. To the extent that a response is required, and Paragraph 51 implies WG&S, Inc. engaged in any wrongdoing, WG&S, Inc. denies the allegations in Paragraph 51 of the Complaint.

52. Had the Defendants had a "Good Faith" basis to believe Casey had engaged in misconduct, they would not have been obligated to provide Casey with a severance offer equating to six months' salary.

RESPONSE: The allegations in Paragraph 52 of the Complaint constitute an argument by counsel to which no response is required. To the extent that a response is required, and Paragraph 52 implies WG&S, Inc. engaged in any wrongdoing, WG&S, Inc. denies the allegations in Paragraph 52 of the Complaint and refers the Court to the content of the document at issue.

53. After WG&S terminated his employment, Casey sent an email to the employees of WG&S, criticizing WG&S.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 53 of the Complaint that Plaintiff sent an email to employees criticizing WG&S, Inc. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 52.

54. Casey's remarks were communicated privately to WG&S employees and were not disclosed to any third party or in a public forum.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 54 of the Complaint.

55. While Casey's comments may have been uncomfortable for WG&S to read, they did not constitute misconduct under the employment contract Casey and WG&S entered into.

RESPONSE: The allegations in Paragraph 55 of the Complaint constitute an argument by counsel to which no response is required. To the extent that a response is required, WG&S, Inc. denies the allegations in Paragraph 55.

56. After Casey sent his farewell email, WG&S rescinded the six-month severance agreement they had previously agreed to provide Casey, breaching their employment contract.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 56 of the Complaint.

57. WG&S explicitly violated its employment agreement with Mr. Casey by rescinding his severance package after he issued a farewell message to his colleagues.

RESPONSE: The allegations in Paragraph 57 of the Complaint set forth legal conclusions, to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 57.

58. Casey's email message was sent after WG&S had already decided to terminate Plaintiff's employment, and does not rise to the level of misconduct to justify Defendant's rescission of the offer of severance.

RESPONSE: The allegations in Paragraph 58 of the Complaint constitute an argument by counsel to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 58.

59. Casey's email played no part in the Defendants' decision to terminate his employment, as the Defendants' decision to terminate Casey's employment was made independently and before his farewell email to his colleagues.

RESPONSE: The allegations in Paragraph 59 of the Complaint constitute an argument by counsel to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 59.

**<u>Plaintiff's Whistleblower Claims</u>**

60. Additionally, Defendants retaliated against Plaintiff as a result of his Whistleblower complaints.

RESPONSE: The allegations in Paragraph 62 of the Complaint set forth legal conclusions to which no response is required. To the extent that a response is required, WG&S, Inc. denies the allegations in Paragraph 60.

61. During his employment, Plaintiff was made aware that a brand of Whiskey imported by the Defendants was improperly labeled and violated U.S. labeling laws.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief of what "Plaintiff was made aware" of and on this basis denies the allegations in Paragraph 61 of the Complaint.

62. 27 CFR § 5.74 requires that "For all domestic or foreign whiskies that are aged less than 4 years, including blends containing a whisky that is aged less than 4 years, an age statement and percentage of types of whisky statement is required to appear on a label, unless the whisky is labeled as "bottled in bond" in conformity with § 5.88."

RESPONSE: The allegations in Paragraph 62 of the Complaint set forth a legal conclusion to which no response is required. To the extent that a response is required, WG&S, Inc. respectfully refers the Court to the cited regulation. To the extent any allegations of wrongdoing are contained in Paragraph 62, they are denied.

63. The whiskey imported by Defendants and sold in the United States under the name Clan MacGregor was only aged for three years and had not been labeled correctly by WG&S pursuant to the 27 CFR § 5.74, meaning Defendants violated 27 CFR § 5.74 by selling improperly labeled whiskey.

RESPONSE: The allegations in Paragraph 63 of the Complaint set forth a legal conclusion to which no response is required. To the extent that a response is required, WG&S, Inc. respectfully refers the Court to the cited regulation. To the extent any allegations of wrongdoing are contained in Paragraph 63, they are denied.

64. As President and managing director at WG&S, Plaintiff was informed that the company did not want to risk telling the authorities of the mislabeling, for fear it would expose WG&S to potential fines and consumer lawsuits.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 64 of the Complaint that Plaintiff was its President and Managing Director of its United States operations for a period of time. Except as so stated, WG&S, Inc. denies the remaining allegations set forth in Paragraph 64.

65. WG&S informed Plaintiff that they planned to change the liquid inside Clan MacGregor to a four-year whiskey moving forward to bring it into compliance, and then at some point in the future, change to the correct 3-year label and liquid to avoid anyone looking into the history.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 65 of the Complaint.

66. WG&S specifically made this decision with the hopes it would discourage someone from looking into the history of Clan MacGregor.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 66 of the Complaint.

67. Plaintiff objected and informed Shona, head of WG&S United States legal division, that WG&S would be intentionally deceiving regulatory agencies if discovered and would have a huge reputational impact on WG&S.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 67 of the Complaint.

68. Defendants dismissed plaintiff’s concerns as low risk but made it clear to Plaintiff that WG&S did not agree with or appreciate Plaintiff’s position on the issue.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 68 of the Complaint.

69. Additionally, Plaintiff became aware of an issue involving WG&S’s former Chief Marketing Officer (“CMO”).

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 69 of the Complaint, including what Plaintiff “became aware of,” and on this basis denies the same.

70. In October of 2025, WG&S’s head of procurement raised a major compliance issue where the CMO had circumvented the new vendor process, pressuring the head of procurement to approve, and then proceeded to award a new vendor with a $500K project.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 70 of the Complaint.

71. Upon information and belief, the CMO had a personal relationship with the vendor, and an award of this nature is a specific and material compliance breach.

RESPONSE: WG&S, Inc. lacks knowledge or information sufficient to form a belief regarding the truth of the allegations, and on this basis denies same.

72. Plaintiff brought the issue to Shona's attention on Oct 22nd on a drive to the airport. Shona was aware of the violation and seemed to downplay its gravity, suggesting it was an urgent business need.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 72 of the Complaint that on October 22, 2025, Plaintiff and Shona Tennant shared an airport taxi ride. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 72.

73. Plaintiff addressed the issue with Gordon and the CMO at an October 31, 2025, meeting.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 73 of the Complaint that on October 31, 2025, Plaintiff met with Mr. Gordon and then-Chief Marketing Officer Vérane de Marffy. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 73.

74. Shortly thereafter, the CMO filed an internal complaint against Plaintiff.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 74 of the Complaint.

75. At a November 20, 2025, meeting with Payne, Napier, and Ken (Executive Board member), Plaintiff made it clear that he believed this conduct created risk for him, making him liable and accountable for the US business.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 75 of the Complaint that on November 20, 2025, Plaintiff had a meeting with Mr. Payne, Mr. Napier and Mr. McKinlay. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 75.

76. Upon information and belief, had Plaintiff not reported the illegality, he would have been liable to WG&S for breach of his Duty of Loyalty, Duty of Good Faith, and a breach of his fiduciary duty.

RESPONSE: The allegations in Paragraph 76 of the Complaint set forth a hypothetical and legal conclusions, to which no response is required. To the extent that the allegations in Paragraph 76 imply any misconduct by WG&S, Inc., they are denied.

**AS AND FOR A FIRST CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**Discrimination Based on Disability; Executive Law § 296(1)(a))**

77. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

RESPONSE: WG&S, Inc. repeats, reiterates, and incorporates by reference all of its responses to all previous paragraphs as if set forth fully herein in response to Paragraph 77 of the Complaint.

78. Executive Law § 296(1)(a) provides that "It shall be an unlawful discriminatory practice for an employer ... because of an individual's ... disability ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

RESPONSE: The allegations in Paragraph 78 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. refers the Court to the text of the cited statute. To the extent any allegations of wrongdoing are contained in Paragraph 78, they are denied.

79. WG&S discriminated against Plaintiff because of his disability in violation of Executive Law § 296(1)(a) by terminating his employment after he explained that he would need to accommodate his travel schedule due to the neck and back injuries he sustained as a result of his September 2025 injury from a car accident.

RESPONSE: The allegations in Paragraph 79 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations set forth in Paragraph 79.

80. At no time did WG&S engage in a cooperative dialogue and/or interactive process with Plaintiff to ascertain if Plaintiff's requested accommodation was reasonable before terminating Plaintiff's employment.

RESPONSE: The allegations in Paragraph 80 set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 80.

81. WG&S has a duty to engage in a cooperative dialogue and/or interactive process with a disabled worker to ascertain whether any reasonable accommodation would allow a disabled worker to work with an accommodation.

RESPONSE: The allegations in Paragraph 81 of the Complaint set forth legal conclusions to which no further response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 81 and it denies it engaged in any wrongdoing.

82. WG&S did not engage in an interactive process with Plaintiff to determine if any reasonable accommodation could enable Plaintiff to work with an accommodation.

RESPONSE: The allegations in Paragraph 82 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 82 and it denies it engaged in any wrongdoing.

83. Based on the foregoing actions, Defendants discriminated against Plaintiff because of his disability in violation of Executive Law § 296(1)(a).

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 83 of the Complaint.

84. As a direct and proximate result of Defendants' discrimination in violation of Executive Law § 296(1)(a), Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 84 of the Complaint.

85. As a direct and proximate result of Defendants discrimination in violation of Executive Law § 296(1)(a), Plaintiff is entitled to damages including, but not limited to, past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 85 of the Complaint.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**Discrimination Based on Disability; N.Y.C. Admin. Code § 8-107 (1)(a))**

86. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

RESPONSE: WG&S, Inc. repeats, reiterates, and incorporates by reference all of its responses to all previous paragraphs as if set forth fully herein in response to Paragraph 86 of the Complaint.

87. N.Y.C. Admin. Code § 8-107 (1)(a) provides that "It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived... disability... To discriminate against such a person in compensation or in terms, conditions, or privileges of employment."

RESPONSE: The allegations in Paragraph 87 of the Complaint set forth a legal conclusion to which no further response is required. To the extent a response is required, WG&S, Inc. refers the Court to the text of the cited statute. To the extent any allegations of wrongdoing are contained in Paragraph 87, they are denied.

88. At no time did WG&S engage in a cooperative dialogue and/or interactive process with Plaintiff to ascertain if Plaintiff's requested accommodation was reasonable before terminating Plaintiff's employment.

RESPONSE: The allegations in Paragraph 88 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations set forth in Paragraph 88.

89. WG&S has a duty to engage in a cooperative dialogue and/or interactive process with disabled workers to ascertain whether any reasonable accommodation would allow a disabled worker to work with an accommodation.

RESPONSE: The allegations in Paragraph 89 of the Complaint set forth legal conclusions to which no further response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 89 and it denies it engaged in any wrongdoing.

90. WG&S did not engage in an interactive process with Plaintiff to determine if any reasonable accommodation could enable Plaintiff to work.

RESPONSE: The allegations in Paragraph 90 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 90 and it denies it engaged in any wrongdoing.

91. Based on the foregoing actions, Defendants discriminated against Plaintiff because of his disability in violation of N.Y.C. Admin. Code § 8-107 (1)(a).

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 91 of the Complaint.

92. As a direct and proximate result of Defendants' discrimination in violation of N.Y.C. Admin. Code § 8-107 (1)(a), Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 92 of the Complaint.

93. As a direct and proximate result of Defendants' discrimination in violation of N.Y.C. Admin. Code § 8-107 (1)(a), Plaintiff is entitled to damages, including, but not limited to, past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees, and costs of this action, and pre-judgment interest.

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 93 of the Complaint.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**Retaliation Based on Disability; N.Y.C. Admin. Code § 8-107 (7))**

94. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

RESPONSE: WG&S, Inc. repeats, reiterates and incorporates by reference all of its responses to all previous paragraphs as if set forth fully herein in response to Paragraph 94 of the Complaint.

95. N.Y.C. Admin. Code § 8-107(7) provides that "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has ... (v) requested a reasonable accommodation under this chapter."

RESPONSE: The allegations in Paragraph 95 of the Complaint set forth a legal conclusion to which no further response is required. To the extent a response is required, WG&S, Inc. refers the Court to the text of the cited statute. To the extent any allegations of wrongdoing are contained in Paragraph 95, they are denied.

96. At no time did WG&S engage in a cooperative dialogue and/or interactive process with Plaintiff to ascertain if Plaintiff's requested accommodation was reasonable before terminating Plaintiff's employment.

RESPONSE: The allegations in Paragraph 96 set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations set forth in Paragraph 96.

97. WG&S has a duty to engage in a cooperative dialogue and/or interactive process with disabled workers to ascertain whether any reasonable accommodation would allow a disabled worker to work with an accommodation.

RESPONSE: The allegations in Paragraph 97 of the Complaint set forth legal conclusions to which no further response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 97 and it denies it engaged in any wrongdoing.

98. WG&S did not engage in an interactive process with Plaintiff to determine if any reasonable accommodation could enable Plaintiff to work.

RESPONSE: The allegations in Paragraph 98 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations in Paragraph 98 and it denies it engaged in any wrongdoing.

99. Based on the foregoing actions, Defendants discriminated against Plaintiff because of his disability in violation of N.Y.C. Admin. Code § 8-107 (7).

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 99 of the Complaint.

100. As a direct and proximate result of Defendants' discrimination in violation of N.Y.C. Admin. Code § 8-107 (7), Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 100 of the Complaint.

101. As a direct and proximate result of Defendants' discrimination in violation of N.Y.C. Admin. Code § 8-107 (7), Plaintiff is entitled to damages, including, but not limited to, past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees, and costs of this action, and pre-judgment interest.

RESPONSE: WG&S, Inc. denies the allegations set forth in Paragraph 101 of the Complaint.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**AS AGAINST WG&S**
**Breach of Contract**

102. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

RESPONSE: WG&S, Inc. repeats, reiterates, and incorporates by reference all of its responses to all previous paragraphs as if set forth fully herein in response to Paragraph 102 of the Complaint.

103. On or about March 2025, WG&S and Casey entered into an employment agreement (the "agreement").

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 103 of the Complaint that on March 7, 2025, WG&S, Inc. and Plaintiff both executed an offer letter with respect to Plaintiff's employment with WG&S, Inc. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 103.

104. The agreement stipulated that WG&S was required to provide Mr. Casey with a minimum of six months' advance notice of termination or to compensate him instead of such notice, except in cases where the termination was based on WG&S's "Good Faith" judgment that Mr. Casey had engaged in misconduct.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 104 of the Complaint, and respectfully refers the Court to the content of the offer letter executed by WG&S, Inc. and Plaintiff.

105. The term "Misconduct" was not explicitly defined within Mr. Casey's offer letter, the supplemental Employee Confidentiality and Protective Covenant Agreement, or the WG&S Employee Handbook.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 105 of the Complaint, and respectfully refers the Court to the content of the offer letter executed by WG&S, Inc. and Plaintiff.

106. In accordance with the terms of his offer, Mr. Casey commenced employment with WG&S on April 1, 2025.

RESPONSE: WG&S, Inc. admits the allegations in Paragraph 106 of the Complaint.

107. On December 3, 2025, WG&S informed Casey that, effective December 5, 2025, they would terminate his employment without providing him with the six months' notice required by the employment agreement and agreed to provide him with six months' pay as severance pursuant to the agreement.

RESPONSE: WG&S, Inc. admits that on December 3, 2025, it informed Plaintiff that his employment was being terminated effective December 5, 2025. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 107.

108. On December 3, 2025, at approximately 4:52 pm, Casey sent an email to his team informing them of his termination, which was also critical of the policies of WG&S.

RESPONSE: WG&S, Inc. admits the allegation in Paragraph 108 of the Complaint that on December 3, 2025, at approximately 4:52 pm, Plaintiff sent an email, and respectfully refers the Court to the contents of that document. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 108.

109. After Casey sent the email, WG&S revoked the six months' severance pay they had agreed to pay him.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 109 of the Complaint.

110. WG&S breached the employment agreement by terminating Plaintiff's employment without providing him with a minimum of six months' advance notice of termination or compensating him instead of such notice.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 110 of the Complaint.

111. Based on the foregoing actions, Defendants breached their employment contract with Plaintiff.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 111 of the Complaint.

112. As a direct and proximate result of Defendants' breach of the employment agreement, Plaintiff suffered, and continues to suffer, monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 112 of the Complaint.

113. As a direct and proximate result of Defendants' breach of the employment agreement, Plaintiff is entitled to damages, including, but not limited to, General, Consequential

past and future lost wages and benefits, damages to compensate him for past and future physical and emotional distress, punitive damages, and costs of this action, and pre-judgment interest.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 113 of the Complaint.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**<u>Volitions of New York Labor Law § 740(2)(a)</u>**

114. Plaintiff hereby repeats, realleges, and reiterates all the allegations stated above as if fully set forth herein.

RESPONSE: WG&S, Inc. repeats, reiterates, and incorporates by reference all of its responses to all previous paragraphs as if set forth fully herein in response to Paragraph 114 of the Complaint.

115. N.Y. Labor Law § 740(2)(a), New York State's Whistleblower Statute, explicitly bars employers from "tak[ing] any retaliatory action against an employee ... because such employee ... discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation."

RESPONSE: The allegations in Paragraph 115 of the Complaint set forth a legal conclusion to which no further response is required. To the extent a response is required, WG&S, Inc. refers the Court to the text of the cited statute. To the extent any allegations of wrongdoing are contained in Paragraph 115, they are denied.

116. Plaintiff's belief that Defendants' failure to label Clan MacGregor properly was illegal was and is reasonable and is protected by N.Y. Labor Law § 740.

RESPONSE: The allegations in Paragraph 116 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. lacks knowledge or information sufficient to form a belief regarding the truth of the allegations as to what Plaintiff "belie[ved]" and on this basis denies same. WG&S, Inc. denies the remaining allegations set forth in Paragraph 116 of the Complaint.

117. Plaintiff disclosed to the head of WG&S United States legal division that improperly labeling Clan MacGregor was illegal and violated United States Law.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 117 of the Complaint.

118. Defendants terminated Plaintiff's employment after he complained of their illegal labeling practices.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 118 of the Complaint.

119. But for Plaintiff's complaints about the proper relabeling of Clan MacGregor, Defendants would not have terminated his employment.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 119 of the Complaint.

120. Additionally, Defendants retaliated against Plaintiff for his complaints about the CMO's malfeasance in violation of N.Y. Labor Law § 740(2)(a).

RESPONSE: The allegations in Paragraph 120 of the Complaint set forth legal conclusions for which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations set forth in Paragraph 120.

121. The CMO's actions violated her duty of loyalty and fair dealing and constituted a breach of her fiduciary duty to WG&S.

RESPONSE: The allegations in Paragraph 121 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations set forth in Paragraph 121.

122. Plaintiff reported this breach to WG&S and reasonably believed that the CMO's violation amounted to a breach of her fiduciary duty and her duty of loyalty to WG&S, which Plaintiff reported to his supervisor.

RESPONSE: WG&S, Inc. lacks knowledge and information sufficient to form a belief regarding the truth of the allegations in Paragraph 122 related to what Plaintiff "believed" and on this basis denies same. Except as so stated, WG&S, Inc. denies the remaining allegations in Paragraph 122 of the Complaint.

123. Plaintiff's reporting of the CMO's breach of fiduciary duty and duty of loyalty is a law, rule, or regulation protected by N.Y. Labor Law § 740(2)(a).

RESPONSE: The allegations in Paragraph 123 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, WG&S, Inc. denies the allegations set forth in Paragraph 123.

124. But for Plaintiff's complaints about the CMO, Defendants would not have terminated his employment.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 124 of the Complaint.

125. Plaintiff suffered and continues to suffer monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 125 of the Complaint.

126. Plaintiff also suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages.

RESPONSE: WG&S, Inc. denies the allegations in Paragraph 126 of the Complaint.

127. As a direct and proximate result of Terri Medi and Third-Party Defendants' unlawful actions in violation of N.Y. Labor Law § 740(2)(a), Third-Party Plaintiff is entitled to punitive damages plus attorneys' fees and costs.

RESPONSE: Paragraph 127 appears to reference matters, entities, or circumstances not applicable to WG&S, Inc. or this action. To the extent a response is required to these allegations which appear unrelated to this action, WG&S, Inc. denies the allegations set forth in Paragraph 127 of the Complaint.

## **PRAYER FOR RELIEF**

WG&S, Inc. denies Plaintiff is entitled to any relief set forth in the "WHEREFORE" paragraph and subparagraphs, or any relief whatsoever.

## **AS TO JURY DEMAND**

WG&S, Inc. admits that Plaintiff purports to seek a trial by jury, but denies that Plaintiff is entitled to have a jury decide any or all of his claims.

**AFFIRMATIVE AND OTHER DEFENSES**

WG&S, Inc. asserts the following affirmative and other defenses in accordance with Rule 8(c) of the Federal Rules of Civil Procedure and without assuming any burden of proof that otherwise does not exist as a matter of law.

**FIRST DEFENSE**

The Complaint and each and every cause of action alleged therein fail to state a claim upon which relief can be granted.

**SECOND DEFENSE**

Upon information and belief, Plaintiff lacks standing to assert some or all of the causes of action alleged.

**THIRD DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**FOURTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because he has failed to exhaust his administrative remedies and to satisfy certain conditions precedent and/or jurisdictional prerequisites to instituting suit, including, upon information and belief, in the service and filings required by governing law.

**FIFTH DEFENSE**

Plaintiff's discrimination and retaliation claims are barred, in whole or in part, because the employment actions about which he complains were taken for legitimate, non-discriminatory business reasons, and the same decisions would have been made regardless of his alleged membership in a protected class.

**SIXTH DEFENSE**

Plaintiff's discrimination claims under the New York State Human Rights Law and New York City Human Rights Law are barred, in whole or in part, because the conduct about which Plaintiff complains does not constitute actionable discrimination and, at most, amounted to petty slights, minor annoyances, and/or trivial inconveniences.

**SEVENTH DEFENSE**

Plaintiff's disability-related claims under the New York State Human Rights Law and New York City Human Rights Law are barred, in whole or in part, because Plaintiff was not an individual with a disability within the meaning of applicable law.

**EIGHTH DEFENSE**

Plaintiff's disability-related claims are barred, in whole or in part, because Plaintiff could not perform the essential functions of his position, with or without a reasonable accommodation.

**NINTH DEFENSE**

Plaintiff's disability-related claims are barred, in whole or in part, because Plaintiff failed to request a reasonable accommodation and failed to otherwise engage in the interactive process.

**TENTH DEFENSE**

Plaintiff's disability-related claims are barred, in whole or in part, because Plaintiff failed to request a reasonable accommodation.

**ELEVENTH DEFENSE**

Plaintiff's retaliation claims under the New York State Human Rights Law and New York City Human Rights Law are barred, in whole or in part, because Plaintiff did not engage in protected activity as defined by the applicable statutes.

**TWELFH DEFENSE**

Plaintiff's retaliation claims under the New York State Human Rights Law and New York City Human Rights Law are barred, in whole or in part, because Plaintiff cannot establish a causal connection between any alleged protected activity and any challenged employment action.

**THIRTEENTH DEFENSE**

Plaintiff did not disclose, threaten to disclose, object to, or refuse to participate in any activity, policy, or practice protected under New York Labor Law § 740, and therefore did not engage in protected activity within the meaning of the statute.

**FOURTEENTH DEFENSE**

Under New York Labor Law § 740(4)(c), the actions about which Plaintiff complains were predicated upon legitimate, independent, and non-retaliatory reasons unrelated to any alleged protected activity.

**FIFTEENTH DEFENSE**

Plaintiff's breach of contract claim fails because no valid and enforceable contract existed between Plaintiff and WG&S, Inc. concerning the matters alleged in the Complaint.

**SIXTEENTH DEFENSE**

Plaintiff's breach of contract claim fails because WG&S, Inc. fully performed all obligations owed under any applicable agreement and did not breach any contractual duty owed to Plaintiff.

**SEVENTEENTH DEFENSE**

Plaintiff's breach of contract claim fails because any damages allegedly suffered were not caused by any breach by WG&S, Inc. and are speculative, remote, unrecoverable, and/or otherwise not recoverable as a matter of law.

**EIGHTEENTH DEFENSE**

Without conceding that WG&S, Inc. has the burden of proof on this issue, Plaintiff did not suffer any damages attributable to any allegedly wrongful conduct by WG&S, Inc.

**NINETEENTH DEFENSE**

Plaintiff cannot establish that any damages allegedly suffered were caused by any act or omission of WG&S, Inc..

**TWENTIETH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the exclusivity provisions and remedies available under the New York Workers' Compensation Law.

**TWENTY-FIRST DEFENSE**

Plaintiff's claims are barred, in whole or in part, to the extent any damages allegedly suffered by Plaintiff, entitlement to which is expressly denied, were the direct and proximate result of Plaintiff's own action or inaction.

**TWENTY-SECOND DEFENSE**

Plaintiff failed to mitigate his alleged damages and any recovery must be reduced accordingly.

**TWENTY- THIRD DEFENSE**

Plaintiff's claims and damages are barred in whole or in part by the after-acquired evidence doctrine.

**TWENTY-FOURTH DEFENSE**

The alleged actions on which Plaintiff premises the claims in the Complaint are insufficient to warrant imposition of punitive damages. Further, any claim for compensatory or

punitive damages are governed by or subject to the requirements and limitations of the statutes sued upon.

**TWENTY-FIFTH DEFENSE**

Plaintiff is not entitled to punitive damages. Alternatively, any award of punitive damages must be limited and reduced to the extent required by the United States Constitution and the Constitution of the State of New York, including the guarantees of due process and protection against excessive fines, penalties, or punitive awards.

**TWENTY-SIXTH DEFENSE**

Plaintiff is not entitled to an award of attorneys' fees, costs, or expenses unless and until he establishes entitlement to such relief under applicable law.

**TWENTY- SEVENTH DEFENSE**

WG&S, Inc. submits that Plaintiff's claims under Section 297(10) of the New York State Human Rights Law, N.Y. Exec. Law § 297(10), are frivolous and it reserves its right to seek to recover attorneys' fees for the costs associated with its defense against these claims.

**RESERVATION OF RIGHTS**

WG&S, Inc. reserves the right to assert additional defenses based on facts that may be learned in discovery.

**JURY DEMAND**

WG&S, Inc. hereby demand a trial by jury on all issues so triable.

Dated: August 6, 2026
New York, New York

LITTLER MENDELSON, P.C.

By: */s/ Margaret L. Watson*

Philip M. Berkowitz, Esq.
Margaret L. Watson, Esq.
Katharine P. Lennox, Esq.
Anat Maytal, Esq
900 Third Avenue
New York, NY 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719
klennox@littler.com
pberkowitz@littler.com
amaytal@littler.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Margaret L. Watson, hereby certify that on this 6th day of August 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to any non-registered participants identified on the Notice of Electronic Filing.

Dated: August 6, 2026

*<u>/s/ Margaret L. Watson</u>*
Margaret L. Watson