UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES CASEY,

Plaintiff,

– v. –

WILLIAM GRANT AND SONS, INC., GRANT MCKENZIE, and GLENN GORDON,

Defendants.

Civil Action No. 1:26-cv-03700 (MMG)

**DEFENDANTS GRANT MCKENZIE AND GRANT GLENN GORDON'S SPECIAL APPEARANCE AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Philip M. Berkowitz
Margaret L. Watson
Katharine P. Lennox
Anat Maytal
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298

*Attorneys for Defendants*

## Table of Contents


PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

A. Plaintiff's Lawsuit .......... 2

B. Plaintiff's Employment and Contacts with Individual Defendants .......... 3

C. McKenzie's Role at WG&S Ltd. .......... 4

D. Gordon's Role at WG&S Holdings Ltd. .......... 5

E. Plaintiff's Service of Summons and Complaint .......... 6

LEGAL STANDARD .......... 7

ARGUMENT .......... 9

I. PLAINTIFF FAILED TO EFFECTUATE PROPER SERVICE ON THE INDIVIDUAL DEFENDANTS .......... 9

A. Plaintiff Failed to Effectuate Proper Service Under Rule 4(e) .......... 9

1. WG&S, Inc.'s New York Office was Not the Individual Defendants' Residence or Actual Place of Business .......... 10

2. Plaintiff Did Not Establish Delivery to a Person of Suitable Age and Discretion .......... 11

B. Plaintiff Failed to Effectuate Proper Service Under Rule 4(f) .......... 13

II. THIS COURT OTHERWISE LACKS PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS .......... 15

A. The Individual Defendants Are Not Subject To New York's General Jurisdiction Statute .......... 16

B. The Individual Defendants Are Not Subject to New York's Long Arm Statute .......... 17

1. Plaintiff Cannot Establish Jurisdiction Over the Individual Defendants Pursuant to CPLR § 302(a)(1) .......... 18

2. Plaintiff Cannot Establish Jurisdiction Over the Individual Defendants Pursuant to CPLR § 302(a)(2) .............................................. 21

3. Plaintiff Cannot Establish Jurisdiction Over the Individual Defendants Pursuant to CPLR § 302(a)(3) .............................................. 22

C. The Exercise of Jurisdiction is not Reasonable and Would Violate Due Process and Fairness Requirement...................................................................... 23

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bah v. Apple Inc.*,
No. 19-CV-3539 (PKC), 2020 WL 614932 (S.D.N.Y. Feb. 10, 2020) ....................................9

*Bresciani v. Leela Mumbai-A-Kempinski Hotel*,
311 F. Supp. 2d 440 (S.D.N.Y. 2004)......................................................................................16

*Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*,
No. 09-CIV-6148 (VM) (MHD), 2012 WL 12932049 (S.D.N.Y. July 17, 2012) ..................................................................................................................................18

*Cassano v. Altshuler*,
186 F. Supp. 3d 318 (S.D.N.Y. 2016)........................................................................................8

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010).....................................................................................................23

*Darden v. DaimlerChrysler N.Am. Holding Corp.*,
191 F. Supp. 2d 382 (S.D.N.Y. 2002)........................................................................................8

*DeLorenzo v. Viceroy Hotel Grp., LLC*,
757 F. App'x 6 (2d Cir. 2018) ..................................................................................................15

*DeMott v. Bacilious*,
No. 11-CV-6966, 2012 WL 601074 (S.D.N.Y. Feb. 24, 2012)..............................................12

*Dynegy Midstream Servs. v. Trammochem*,
451 F.3d 89 (2d Cir. 2006)..........................................................................................................7

*George v. Pro Disposables Int'l, Inc.*,
No. 15 Civ. 3385 (RA), 221 F. Supp. 3d 428 (S.D.N.Y. 2016)................................................7

*Gilbert v. Indeed, Inc.*,
513 F. Supp. 3d 374 (S.D.N.Y. 2021)......................................................................................16

*Grp. One Ltd. v. GTE GmbH*,
523 F. Supp. 3d 323 (E.D.N.Y. 2021) ...............................................................................19, 20

*Hawthorne v. Citicorp Data Sys., Inc.*,
219 F.R.D. 47 (E.D.N.Y. 2003) .................................................................................................8

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)..................................................................................................................23

*Kramer v. Vogl*,
17 N.Y.2d 27 (1966) ....................21

*Kwon v. Yun*,
No. 05 CIV.1142 GEL, 2006 WL 416375 (S.D.N.Y. Feb. 21, 2006) ....................8

*Landau v. New Horizon Partners, Inc.*,
No. 02 CIV.6802 (JGK), 2003 WL 22097989 (S.D.N.Y. Sept. 8, 2003)....................22

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)....................15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)....................24

*Perry v. Erie Cnty. Supreme Ct.*,
No. 1:23-CV-00848 EAW, 2024 WL 3495808 (W.D.N.Y. July 22, 2024) ....................8, 10, 15

*Prescription Containers, Inc. v. Cabiles*,
No. 12 CIV. 4805 CBA VMS, 2014 WL 1236919 (E.D.N.Y. Feb. 14, 2014), *report and recommendation adopted*, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014) ....................8, 12

*Rush v. Savchuk*,
444 U.S. 320 (1980)....................24

*Selmani v. City of N.Y.*,
100 A.D.3d 861 (2d Dep't 2012) ....................10, 14

*Shostack v. Diller*,
No. 15–CV–2255 (GBD)(JLC), 2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015)....................20

*Sikhs for Justice v. Nath*,
850 F. Supp. 2d 435 (S.D.N.Y. 2012), *aff'd*, 596 F. App'x 7 (2d Cir. 2014)....................8

*Smart Study Co. v. Acuteye-Us*,
620 F. Supp. 3d 1382 (S.D.N.Y. 2022), *aff'd sub nom. Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025)....................15

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*,
164 F.4th 164 (2d Cir. 2025) ....................13, 14

*TAGC Mgmt., LLC v. Lehman*,
842 F. Supp. 2d 575 (S.D.N.Y. 2012)....................13

*Tokio Marine & Nichido Fire Ins. Co. v. Canter*,
No. 07 Civ. 5599 (PKL), 2009 WL 2461048 (S.D.N.Y. Aug. 11, 2009)....................10, 14

*Trisvan v. Heyman*,
305 F. Supp. 3d 381 (E.D.N.Y. 2018) ....................18, 19, 20

*Trs. of Empire State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Cooperation, Pension & Welfare Funds v. R. Baker & Son All Indus. Servs., Inc.*, No. CV 13-04590 JS GRB, 2014 WL 6606402 (E.D.N.Y. Aug. 4, 2014), *report and recommendation adopted,* 2014 WL 4536911 (E.D.N.Y. Sept. 11, 2014) ....................12

*Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*,
No. 13 Civ. 7639 (LTS), 2016 WL 3926449 (S.D.N.Y. July 15, 2016)....................8

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988)....................13

*Weston Funding, LLC v. Consorcio G. Grupo Dina, S.A. de C.V.*,
451 F. Supp. 2d 585 (S.D.N.Y. 2006)....................7

*Wilson v. Cuomo*,
No. CV21-4815 (GRB) (AYS), 2022 WL 4644695 (E.D.N.Y. Aug. 28, 2022), *report and recommendation adopted*, 2022 WL 4662825 (E.D.N.Y. Sept. 30, 2022....................8

*Xiu Feng Li v. Hock*,
371 F. App'x 171 (2d Cir. 2010) ....................9

*Zhang v. Baidu.com Inc.*,
932 F. Supp. 2d 561 (S.D.N.Y. 2013)....................15

**Statutes**

CPLR § 301....................15, 16, 17, 18

CPLR § 302....................15, 18

CPLR § 302(a)(1) ....................18, 19, 20

CPLR § 302(a)(2) ....................18, 20, 21

CPLR § 302(a)(3) ....................18, 22, 23

CPLR § 308....................10, 13

CPLR § 308(2)....................11, 12, 13

New York Labor Law § 740 ....................1, 3

**Rules**

Fed. R. Civ. P. 4(e) ....................9, 10, 13, 14

Fed. R. Civ. P. 4(e)(1) ....................9, 13

Fed. R. Civ. P. 4(f) ....................2, 13, 14, 15

Fed. R. Civ. P. 4(f)(1) ....................14

Fed. R. Civ. P. 4(f)(3) ....................14

Fed. R. Civ. P. 4(k)(1)(A) ....................15

Fed. R. Civ. P. 12(b)(2) .................... *passim*

Fed. R. Civ. P. 12(b)(5) .................... *passim*

**Other Authorities**

Hague Conference on Private International Law, *Status Table: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 ....................14

Jersey Legal Information Board, *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters*, https://www.jerseylaw.je/laws/treaties/Pages/Convention-on-the-Service-Abroad-of-Judicial-and-Extrajudicial-Documents-in-Civil-and-Commercial-Matters.aspx ....................14

Defendants Grant McKenzie ("McKenzie") and Grant Glenn Gordon ("Gordon") submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint for lack of personal jurisdiction. As set forth below, Plaintiff's claims against these individual defendants should be dismissed pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure ("FRCP").

## PRELIMINARY STATEMENT

By the Complaint, Plaintiff asserts, *inter alia*, claims of disability discrimination arising under New York State's Executive Law and the Administrative Code of the City of New York, as well as claims of an alleged violation of New York Labor Law § 740 against his employer Defendant William Grant & Sons, Inc. ("WG&S, Inc.") He also sues McKenzie and Gordon individually on these claims and seeks to impose liability on them in their individual capacities. (ECF No. 1, Compl. ¶¶ 11–18; 77–85; 86–93; 94–101; 114–127). Dismissal against McKenzie and Gordon (collectively the "individual defendants") is warranted because Plaintiff did not properly serve the individual defendants with process and they lack the requisite contacts with this forum to establish personal jurisdiction.

Rather than serving the individual defendants with process through any method authorized by the FRCP or New York law, Plaintiff attempted to serve them by delivering a copy of the summons and complaint to an unidentified "John Doe" at a corporate office and then attributing that purported service to them. (ECF Nos. 24–25). That is not a recognized method of serving a natural person. Plaintiff neither personally served the individual defendants, served an authorized agent, established valid substitute service at either individual's actual place of business, dwelling place, or usual place of abode, nor pursued service abroad through the procedures prescribed by Rule 4(f) and the Hague Convention. Because Plaintiff failed to comply with any authorized method

of service and made no meaningful effort to effect service through the methods available to him, service of process was insufficient as a matter of law, and dismissal under Rule 12(b)(5) is required.

Dismissal is independently warranted because this Court lacks personal jurisdiction over the individual defendants. At all relevant times, the Plaintiff was employed by WG&S, Inc., a New Jersey corporation, headquartered in New Jersey and with operations in New York.[1] In contrast, McKenzie is employed by William Grant & Sons Limited ("WG&S Ltd."), a Scottish entity and Gordon is affiliated with William Grant & Sons Holdings Limited ("WG&S Holdings Ltd."), an England and Wales entity. WG&S Holdings Ltd. is the 100% owner of WG&S Ltd. and the ultimate parent company of WG&S, Inc. McKenzie lives and works in the United Kingdom, and served as the Chief Officer, Network Distribution Companies for WG&S Ltd. beginning November 13, 2025, three weeks before Plaintiff's employment with WG&S, Inc. was terminated. Gordon resides in the Bailiwick of Jersey, an autonomous, self-governing British Crown Dependency, and serves as the non-executive Chairman of the Supervisory Board of WG&S Holdings Ltd. Neither individual defendant resides in New York, owns property in New York, or is employed by a New York or U.S. entity. Their contacts with New York are, at most, isolated and incidental to their roles with WG&S Ltd. (McKenzie) and WG&S Holdings Ltd. (Gordon), international entities. Accordingly, the claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5).

## FACTUAL BACKGROUND

### A. Plaintiff's Lawsuit

Plaintiff commenced this action on May 5, 2026, asserting four claims against WG&S, Inc. and the individual defendants. More specifically, the Complaint asserts claims against all named

---

[1] The Complaint incorrectly names Defendant William Grant & Sons Inc. as "William Grant and Sons, Inc." (Compl. ¶ 8.) The individual defendants otherwise do not presently dispute that this Court may exercise diversity jurisdiction over Plaintiff's claims with respect to WG&S, Inc. or that venue is proper in this District.

defendants for alleged (i) disability discrimination in violation of New York State's Executive Law ("NYSHRL"), (ii) disability discrimination in violation of the Administrative Code of the City of New York ("NYCHRL"); (iii) retaliation under the NYCHRL because Plaintiff allegedly requested a reasonable accommodation under that statute; and (iv) retaliation in violation of New York's whistleblower law, Labor Law § 740. (Compl. ¶¶ 77–126). The Complaint also asserts a claim of breach of contract against WG&S, Inc. only, identifying WG&S, Inc. as Plaintiff's employer. (*Id.* ¶¶ 94–101).

**B. Plaintiff's Employment and Contacts with Individual Defendants**

Plaintiff was hired in April 2025 as President and Managing Director of WG&S, Inc, a New Jersey corporation, headquartered in New Jersey and with operations in New York. (*Id.* ¶ 19). In September 2025, while in New York, Plaintiff sustained injuries in a car accident and thereafter allegedly informed his then supervisor Søren Hagh ("Hagh") of his injuries. (*Id.* ¶ 23, 25).

In the weeks following his injury, Plaintiff participated in various business travels, including attending a conference in Scotland, which conference Defendant Gordon, Chairman of WG&S Holdings Ltd. also attended. (*Id.* ¶ 28) During those travels, Plaintiff allegedly continued to experience pain from his injuries. (*Id.* ¶¶ 29–35). Notably, Plaintiff does not allege that he requested any accommodation from Gordon. To the contrary, Plaintiff specifically pleads that he left a meeting with Gordon believing that Gordon "did not comprehend that Plaintiff would need to accommodate his injuries and may need to adjust his travel." (*Id.* ¶ 35). Following his return to the United States, Plaintiff was informed on December 3, 2025 that his employment would be terminated effective December 5, 2025. (*Id.* ¶ 49). The Complaint does not identify who made the termination decision, and McKenzie and Gordon have each attested that they did not make the decision to terminated Plaintiff's employment. (McKenzie Decl. ¶¶ 41–47; Gordon Decl. ¶¶ 37–39).

The Complaint separately alleges that Plaintiff raised concerns regarding the conduct of WG&S, Inc.'s former Chief Marketing Officer to Gordon (Compl. ¶¶ 69–73). The Complaint does not allege that Plaintiff raised any concerns whatsoever to Defendant McKenzie or that either individual otherwise participated in, directed, or approved any of the challenged conduct underlying any purportedly protected complaints or reports. Nor does it connect Plaintiff's purported whistleblower activity to any action taken by the individual defendants in their roles with WG&S Ltd. (McKenzie) and WG&S Holdings Ltd. (Gordon).

### C. McKenzie's Role at WG&S Ltd.

McKenzie resides in Brighton and Hove, United Kingdom, and at all relevant times has been employed by WG&S Ltd. (McKenzie Decl. ¶¶ 2, 16; Compl. ¶ 15 (incorrectly alleging that McKenzie resides in London)).[2] McKenzie has never resided in New York, owned property in New York, or been employed by a New York or United States entity. (McKenzie Decl. ¶¶ 19–23). Although his job responsibilities for WG&S Ltd. include oversight of multiple global markets, including the United States, he has at all times performed his duties pursuant to a United Kingdom-based employment arrangement and from the United Kingdom. (*Id*. ¶¶ 23–24).

McKenzie joined WG&S Ltd. on November 13, 2025—approximately three weeks before Plaintiff's employment with WG&S, Inc. was terminated. (McKenzie Decl. ¶ 2). Plaintiff alleges that on the morning of December 2, 2025, he met with McKenzie and discussed his medical condition and the accommodations he believed were necessary following his September 2025 accident.[3] (Compl. ¶ 47). Plaintiff further alleges that he was informed the following day that his

---

[2] References to the Declaration of Grant McKenzie are cited as "(McKenzie Decl., ¶ [paragraph number])."

[3] Plaintiff alleges that McKenzie was the incoming Chief Executive Officer of WG&S, Inc., but as attested to in McKenzie's declaration, McKenzie was never the incoming Chief Executive Officer of WG&S, Inc., nor was he employed in any manner by WG&S, Inc. (*Compare* Compl. ¶ 47 *with* McKenzie Decl. ¶ 3).

employment would be terminated effective December 5, 2025. (*Id*. ¶¶ 48–49). However, Plaintiff does not allege any facts showing that McKenzie participated in, directed, approved, or otherwise influenced the decision to terminate Plaintiff's employment. Rather, Plaintiff alleges only that he met with McKenzie one day before being informed of the decision. (*Id*. ¶¶ 47–49). As set forth in his Declaration, submitted solely for purposes of the Court's jurisdictional analysis, McKenzie was not a decisionmaker with respect to Plaintiff's termination nor was his approval required for the decision to terminate Plaintiff's employment. (McKenzie Decl. ¶¶ 41–47). McKenzie was simply present in New York when the decision to terminate was communicated to Plaintiff.

Further, as pleaded, McKenzie's interactions with Plaintiff were extremely limited. Prior to his only New York visit during Plaintiff's employment, McKenzie had not worked with Plaintiff in any meaningful capacity and had not interacted with him in person. As recited above, during that New York visit, McKenzie met with Plaintiff on December 2, 2025 (Compl. ¶ 47); and he was present in New York at the meeting on December 3, 2025 when Plaintiff was informed that WG&S, Inc. had decided to terminate his employment effective December 5, 2025. (McKenzie Decl. ¶ 43).[4]

### D. Gordon's Role at WG&S Holdings Ltd.

Gordon resides in the Bailiwick of Jersey and has never resided in New York, owned property in New York, or been employed by any WG&S, Inc. entity. (Gordon Decl. ¶¶ 15–27; Compl. ¶ 12).[5] Gordon serves as the non-executive Chairman of WG&S Holdings Ltd. Supervisory Board. (Gordon Decl. ¶ 2). He performs his duties relating to the Supervisory Board of WG&S Holdings Ltd. from the Bailiwick of Jersey, and his role is limited to providing high-level oversight of WG&S Holdings Ltd.'s strategic direction, governance, and long-term performance. (*Id*. ¶¶ 2,

[4] Plaintiff does not even plead that McKenzie was present during the termination meeting; he only pleads the facts relating to his communications with McKenzie on December 2. (Compl. ¶ 47).

[5] References to the Declaration of Grant Glenn Gordon are cited as "(Gordon Decl., ¶ [paragraph number])."

23, 27). Gordon is not involved in the day-to-day management of WG&S, Inc. operations and had no direct managerial authority or oversight over Plaintiff. (*Id.* ¶¶ 27, 29–31).

Gordon 's interactions with Plaintiff were likewise minimal. He was not his supervisor, did not establish his duties, compensation, or reporting structure, and had no responsibility for overseeing his day-to-day work. (*Id.* ¶¶ 28–31). And, although Gordon was informed of the decision to terminate Plaintiff's employment, he was not involved in making that decision, did not participate in the decision-making process, and he was not present during the December 2025 meeting in New York concerning Plaintiff's termination from employment. (*Id.* ¶¶ 37–39).

**E. Plaintiff's Service of Summons and Complaint**

Plaintiff purported to serve the individual defendants by delivering copies of the summons and complaint to an individual at a WG&S, Inc.'s corporate office in New York on June 12, 2026, and subsequently mailing copies of the pleadings on June 16, 2026. (ECF Nos. 24–25). The affidavits of service on file, signed by process server Ronald Krame, reflect that the summons and complaint were not personally delivered to either McKenzie or Gordon, were not left at either individual's dwelling house or usual place of abode, and were not delivered to an agent authorized to accept service on behalf of either individual. (*Id.*). Rather, the process server purportedly served them by delivering the summons and complaint to an individual identified only as "John Doe (REFUSED FULL NAME)" at the New York office and thereafter mailing copies to that same address. (*Id.*).

The individual identified by the process server as "John Doe" was WG&S, Inc.'s Facilities Manager Brett Weitman. Weitman expressly advised the process server that he was not authorized to accept service and could not accept documents on behalf of either individual. (Weitman Decl. ¶¶

9, 14).[6] While Weitman was attending to another delivery at the entrance, the process server left the documents on the floor near the office entrance and departed. (*Id.* ¶¶ 12–13). Only after the process server had left the premises did Weitman retrieve the documents and place them in a company office for safekeeping. (*Id.* ¶¶ 15–16). Weitman did not accept service on behalf of either individual and was not authorized to do so. (*Id.* ¶ 17).

Nor do the pleadings or proofs of service reflect any attempt to serve either individual defendant at any location where they actually reside or work. Both individuals reside abroad, have never maintained a residence or office in New York, and perform their duties for WG&S Ltd. (McKenzie) and WG&S Holdings Ltd. (Gordon) remotely from locations abroad. (Gordon Decl. ¶¶ 15–27; McKenzie Decl. ¶¶ 16, 19–26). Plaintiff made no effort to serve either individual at their residence, place of business, or any other location outside New York. Thus, the record reflects neither personal service nor service upon any authorized agent.

## LEGAL STANDARD

Rules 12(b)(2) and 12(b)(5) provide separate but interrelated grounds for dismissal. Before a federal court may exercise personal jurisdiction over a defendant, "the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006). Where that requirement is not met, dismissal under Rule 12(b)(5) for insufficient service of process is appropriate. *See, e.g.*, *George v. Pro Disposables Int'l, Inc.*, No. 15 Civ. 3385 (RA), 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016); *Weston Funding, LLC v. Consorcio G. Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006); *Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("[w]ithout proper service a court has no personal jurisdiction over a defendant").

[6] References to the Declaration of Brett Weitman are cited as "(Weitman Decl., ¶ [paragraph number])."

When a defendant challenges service, the "plaintiff bears the burden of proving that service was effective on a Rule 12(b)(5) motion to dismiss." *Perry v. Erie Cnty. Supreme Ct.*, No. 1:23-CV-00848 EAW, 2024 WL 3495808, at *4 (W.D.N.Y. July 22, 2024); *Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*, No. 13 Civ. 7639 (LTS), 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016) (dismissing action where plaintiff failed to establish proper service).

In determining whether the plaintiff has met that burden, the Court is not confined to the pleadings and "must look[] to matters outside of the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016); *see also Wilson v. Cuomo*, No. CV21-4815 (GRB) (AYS), 2022 WL 4644695, at *3 (E.D.N.Y. Aug. 28, 2022), *report and recommendation adopted*, 2022 WL 4662825 (E.D.N.Y. Sept. 30, 2022). A plaintiff "must meet this burden by making a prima facie case of proper service through specific factual allegations and any supporting materials." *Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012) (internal quotation marks omitted), *aff'd*, 596 F. App'x 7 (2d Cir. 2014); *see also Kwon v. Yun*, No. 05 CIV.1142 GEL, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) (same). "Conclusory statements are insufficient[.]" *Darden v. DaimlerChrysler N.Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). Critically, a court should not "speculate as to whether a plaintiff" has properly effectuated service of process. *Prescription Containers, Inc. v. Cabiles*, No. 12 CIV. 4805 CBA VMS, 2014 WL 1236919, at *6 n.6 (E.D.N.Y. Feb. 14, 2014), *report and recommendation adopted*, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014).

Moreover, proper service alone does not establish personal jurisdiction. Even if service is sufficient, a plaintiff must independently establish that the Court may exercise jurisdiction over the defendant. To survive a Rule 12(b)(2) motion, the "plaintiff carries the burden of demonstrating that jurisdiction exists." *Xiu Feng Li v. Hock*, 371 F. App'x 171, 173–74 (2d Cir. 2010). In resolving

that issue, the Court may consider affidavits, declarations, and other evidence without converting the motion into one for summary judgment. *See Bah v. Apple Inc.*, No. 19-CV-3539 (PKC), 2020 WL 614932, at *3 (S.D.N.Y. Feb. 10, 2020).

## ARGUMENT

### I. PLAINTIFF FAILED TO EFFECTUATE PROPER SERVICE ON THE INDIVIDUAL DEFENDANTS

#### A. Plaintiff Failed to Effectuate Proper Service Under Rule 4(e)

Rule 4(e) permits service on an individual only by: (1) personal delivery; (2) leaving the summons and complaint at the individual's dwelling or usual place of abode with a person of suitable age and discretion; (3) delivery to an agent authorized by appointment or law to receive service; or (4) compliance with applicable state law. *See* Fed. R. Civ. P. 4(e). . Under Rule 4(e)(1), service may also be made by following the law of the state where the district court is located or where service is made, including New York Civil Practice Law and Rules ("CPLR") § 308. Plaintiff satisfied none of these requirements.

The record reflects that Plaintiff attempted to serve the individual defendants by delivering copies of the summons and complaint to WG&S, Inc.'s New York office and thereafter mailing copies of the pleadings to the same address. (ECF Nos. 24–25). The individual identified in the affidavits of service as "John Doe (REFUSED FULL NAME)" was WG&S, Inc. Facilities Manager Brett Weitman. Weitman expressly advised the process server that he was not authorized to accept service on behalf of either individual. (Weitman Decl. ¶¶ 9, 14). The process server nevertheless left the documents on the floor near the office entrance and departed. (Weitman Decl. ¶ 13). Only after the process server had left the premises did Weitman take the documents and place them in a company office for safekeeping. (Weitman Decl. ¶¶ 15–16). These facts do not satisfy the requirements of service under Rule 4(e) or CPLR § 308.

**1. WG&S, Inc.'s New York Office was Not the Individual Defendants' Residence or Actual Place of Business**

The affidavits of service state that copies of the summons and complaint were mailed to 902 Broadway (WG&S, Inc.'s New York office) because, "upon information and belief," that address constituted the individual defendants' "usual place of abode" and "last known residence." (ECF Nos. 24–25). That assertion is plainly incorrect. 902 Broadway is a commercial office address, not the residence, dwelling place, or usual place of abode of either individual defendant. (Weitman Decl. ¶ 2). On this ground alone, service is deficient.

Even if the process server meant to state "actual place of business," Plaintiff cannot establish that the address constitutes either defendant's "actual place of business" within the meaning of CPLR § 308(2) or as construed by New York courts. An "actual place of business" must include "(1) a place where the defendant regularly transacts business or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." *Perry*, 2024 WL 3495808, at *8 (internal citation omitted).

A corporate office does not become an individual's "actual place of business" merely because the individual is employed by, or affiliated with, a company located there. Rather, the plaintiff must demonstrate a direct, personal, and regular connection between the defendant and the premises, such that the defendant personally and routinely conducts business from that location. *See Selmani v. City of N.Y.*, 100 A.D.3d 861, 862 (2d Dep't 2012) (service invalid where no evidence defendant regularly conducted business at location served); *Tokio Marine & Nichido Fire Ins. Co. v. Canter*, No. 07 Civ. 5599 (PKL), 2009 WL 2461048, at *9–10 (S.D.N.Y. Aug. 11, 2009) (service ineffective at location only loosely associated with defendant).

Plaintiff has made no such showing here. The mere existence of a corporate office at 902 Broadway is insufficient to render that location the individual defendants' "actual place of business"

for purposes of CPLR § 308(2). McKenzie and Gordon are foreign-based executives, and Plaintiff alleges no facts, let alone offers any evidence, demonstrating that either maintains a regular physical presence at the New York office personally or routinely conducts business from that location, or otherwise uses it as his actual place of business. Indeed, McKenzie was employed by WG&S Ltd. in the United Kingdom and performs his duties from the United Kingdom, while Gordon likewise resides and performs his duties for the Supervisory Board of WG&S Holdings Ltd. abroad. (McKenzie Decl. ¶¶ 23–26; Gordon Decl. ¶¶ 15–27). Plaintiff therefore has failed to establish the requisite direct, personal connection between the individual defendants and 902 Broadway.

Because CPLR § 308(2) requires strict compliance with its delivery and mailing requirements, Plaintiff cannot establish valid service by mailing process to an address that is neither the residence nor the actual place of business of either individual defendant.

#### 2. Plaintiff Did Not Establish Delivery to a Person of Suitable Age and Discretion

Plaintiff likewise failed to establish that delivery to "John Doe" satisfied CPLR § 308(2). The affidavits identify the recipient only as "John Doe (REFUSED FULL NAME)" and provide no information regarding his relationship to the individual defendants, or any basis to conclude that he was authorized to accept service on their behalf or reasonably likely to convey the summons and complaint to them. (ECF Nos. 24–25). To the contrary, Weitman expressly advised the process server that he was not authorized to accept service on behalf of either individual and could not accept the documents. (*Id*.). As a result, even assuming 902 Broadway were a qualifying location—which it is not—the process server was expressly informed that Weitman lacked authority to accept the documents on behalf of the individual defendants.

While CPLR § 308(2) does not require formal authorization, it does require delivery to a person of suitable age and discretion at a qualifying location under circumstances reasonably

calculated to provide notice. Here, the process server did not accomplish delivery to a person who accepted the papers. Rather, after being twice informed that Weitman could not accept service, the process server abandoned the documents on the floor near the office entrance and left the premises. (Weitman Decl. ¶¶ 13, 16). Weitman's subsequent retrieval of those documents after the process server departed did not transform the failed service attempt into valid delivery. (*Id.*). In any event, because Weitman was neither an agent of the individual defendants nor authorized to accept service on their behalf, Plaintiff cannot establish valid service under CPLR § 308(2). (*Id.*).

Courts in this Circuit have repeatedly rejected attempts to establish service through unidentified or purportedly authorized recipients where the plaintiff cannot establish the recipient's authority or connection to the defendant. *See, e.g.*, *Trs. of Empire State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Cooperation, Pension & Welfare Funds v. R. Baker & Son All Indus. Servs., Inc.*, No. CV 13-04590 JS GRB, 2014 WL 6606402, at *4 (E.D.N.Y. Aug. 4, 2014), *report and recommendation adopted*, 2014 WL 4536911 (E.D.N.Y. Sept. 11, 2014) (rejecting service affidavit identifying recipient only as "Jane Doe" and holding that conclusory assertions regarding her authority to accept service were insufficient to establish proper service); *Prescription Containers, Inc.* 2014 WL 1236919, at *6–8 (holding that service on "John Doe" was ineffective where the affidavit failed to explain the basis for concluding that the recipient was authorized to accept service); *DeMott v. Bacilious*, No. 11-CV-6966, 2012 WL 601074, at *6–7 (S.D.N.Y. Feb. 24, 2012) (finding affidavit insufficient where it stated, "without further exposition," that an unidentified individual was authorized to accept service); *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 584–85 (S.D.N.Y. 2012) (finding reliance on a recipient who refused to identify herself unreasonable).

The deficiency here is not merely a lack of proof. The record affirmatively demonstrates that Weitman expressly refused service, advised the process server that he lacked authority to accept service on behalf of the individual defendants, and never accepted the documents. (Weitman Decl. ¶¶ 9–10, 14, 17). Plaintiff therefore cannot establish compliance with CPLR § 308(2)'s delivery requirement. Because Plaintiff bears the burden of demonstrating proper service and the evidence establishes that the process server merely left the papers behind after service was refused, Plaintiff has failed to carry that burden. Accordingly, service under Rule 4(e)(1) and CPLR § 308(2) was ineffective, and the claims against the individual defendants should be dismissed pursuant to Rule 12(b)(5).

**B. Plaintiff Failed to Effectuate Proper Service Under Rule 4(f)**

Even setting aside the deficiencies in Plaintiff's attempted domestic service, Plaintiff has not complied with Rule 4(f), which governs service of process on individuals located in foreign countries, such as the individual defendants here. Rule 4(e) applies only where an individual is properly served within a judicial district of the United States. Where, as here, the defendants at issue reside and are based abroad, and Plaintiff has failed to effectuate valid service under Rule 4(e) and New York's CPLR § 308, Plaintiff was required to proceed under Rule 4(f). *See, e.g.*, *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) ("compliance with the Convention is mandatory in all cases to which it applies"); *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 172 (2d Cir. 2025) (reaffirming *Schlunk* and holding compliance remains mandatory even where such service "would be unsuccessful."); Hague Convention art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.").

As relevant here, Rule 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice," including the procedures prescribed by the Hague Service Convention. The Hague Convention applies to the United Kingdom and the Bailiwick of Jersey,[7] and service on their residents generally must be accomplished through Hague-compliant means unless an alternative method authorized by Rule 4(f)(3) is obtained from the Court.

Plaintiff has done neither. There is no indication that Plaintiff attempted to serve either individual through the Hague Convention, submitted the required documents to the appropriate foreign authority, utilized any other internationally authorized method of service, or sought leave of Court for alternative service under Rule 4(f)(3). Once domestic service proves ineffective, Rule 4(f) provides the exclusive mechanism for serving defendants located abroad. A plaintiff cannot avoid Rule 4(f)'s requirements by attempting service at a domestic corporate office that does not qualify as the individual defendant's actual place of business or by leaving papers with corporate personnel who are not authorized to accept service on the defendant's behalf. *See, e.g.*, *Selmani*, 100 A.D.3d at 862; *Tokio Marine & Nichido Fire Ins. Co.*, 2009 WL 2461048, at *9–10.

Accordingly, Plaintiff has failed to establish valid service under either Rule 4(e) or Rule 4(f). The attempted service on the individuals is therefore defective as a matter of law, depriving this Court of personal jurisdiction over them. *See, e.g.*, *Smart Study Co.*, 164 F.4th at 172–73 (affirming dismissal where plaintiff failed to effect service in compliance with Rule 4(f) and the Hague Service Convention); *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1391–1400

---

[7] *See* Hague Conference on Private International Law, *Status Table: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17; Jersey Legal Information Board, *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters*, https://www.jerseylaw.je/laws/treaties/Pages/Convention-on-the-Service-Abroad-of-Judicial-and-Extrajudicial-Documents-in-Civil-and-Commercial-Matters.aspx (both last visited August 6, 2026).

(S.D.N.Y. 2022), *aff'd sub nom. Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025) (holding that defendants were not properly served under Rule 4(f) and that the resulting failure of service deprived the court of personal jurisdiction); *Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 565–68 (S.D.N.Y. 2013) (finding Hague Convention service defective and declining to proceed absent proper service).

For all these reasons, dismissal under Rule 12(b)(5) for insufficient service of process is required because Plaintiff failed to effectuate proper service of process on the individual defendants, depriving this Court of personal jurisdiction over them. *See Perry*, 2024 WL 3495808, at *4.

## II. THIS COURT OTHERWISE LACKS PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS

Even if Plaintiff had properly effected service—which he did not—this Court lacks personal jurisdiction over the individual defendants under both general and specific jurisdiction principles. Pursuant to Rule 4(k)(1)(A), personal jurisdiction may be exercised only if a defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243 (2d Cir. 2007)).

New York recognizes both general jurisdiction under CPLR § 301 and specific jurisdiction under CPLR § 302. Plaintiff must "demonstrate that . . . [the individual defendants] w[ere] either (1) 'present' and 'doing business' within the meaning of [CPLR] § 301, or (2) that [they] committed acts within the scope of N.Y.'s long-arm statute, CPLR § 302." *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiff can do neither.

### A. The Individual Defendants Are Not Subject To New York's General Jurisdiction Statute

Section 301 of the CPLR allows courts to exercise general jurisdiction over "persons, property, or status as might have been exercised heretofore." CPLR § 301. Under this provision, the individual defendants would be subject to suit in New York if they engaged in "such a continuous and systematic course of 'doing business' [in New York] that a finding of [their] 'presence' in this jurisdiction is warranted." *Bresciani v. Leela Mumbai-A-Kempinski Hotel*, 311 F. Supp. 2d 440, 444 (S.D.N.Y. 2004) (citations omitted). Courts may consider "whether the defendant maintains offices and bank accounts, employs agents, and regularly solicits business in New York." *Id*. However, even substantial contacts with the state can fail this test, as a defendant "must be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Id*. Moreover, to exercise general jurisdiction over a nonresident individual, that individual must be doing business in New York in his personal capacity, not on behalf of his employer. *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 411–412 (S.D.N.Y. 2021) (ruling that "[a]n employee who is engaged in business in the state does not subject himself, individually, to the general jurisdiction of New York courts unless he is doing business in the state individually," as contrasted with an individual's conducting business on behalf of a corporation).

The Complaint fails to allege, and the record does not support, that the individuals here engaged in any individual, continuous, or systematic business activity in New York. McKenzie is a resident of the United Kingdom who has worked remotely from the United Kingdom throughout his employment with WG&S Ltd. (McKenzie Decl. ¶¶ 16–18, 23–26). He has never resided in New York, owned New York property, or worked for a New York entity. (*Id*. ¶¶ 16, 19–23). McKenzie's employment overlapped with Plaintiff's only for approximately three weeks and, while his duties included oversight of the U.S. business, he was employed pursuant to a United Kingdom-based

contract and worked from the United Kingdom. (*Id.* ¶¶ 2, 17, 41). McKenzie's only alleged connection to New York relevant to this action is a brief December 2025 business trip, during which he met with Plaintiff on December 2 and attended Plaintiff's December 3 termination meeting. (*Id.* ¶¶ 40, 43). McKenzie did not make the decision to terminate Plaintiff's employment. These limited contacts fall far short of the continuous and systematic presence required for general jurisdiction under CPLR § 301.

The same is true of Gordon. Gordon resides in the Bailiwick of Jersey and serves as a non-executive Chairman of the WG&S Holdings Ltd.'s Supervisory Board. (Gordon Decl. ¶¶ 2, 15, 23). His role is limited to high-level oversight of WG&S Holdings Ltd., he is not involved in WG&S, Inc.'s day-to-day operations, he did not directly or indirectly manage or supervise Plaintiff, and he did not make the decision to terminate Plaintiff's employment. (*Id.* ¶¶ 29–31, 37–39). Rather, Gordon interacted with Plaintiff in New York on only one occasion on or about October 31, when Gordon was present in the New York Office for general business meetings. (*Id.* ¶ 32). Accordingly, Gordon lacks the type of continuous, systematic, and permanent contacts with New York necessary to support general jurisdiction under CPLR § 301.

Simply put, McKenzie and Gordon are not "present" in New York for purposes of CPLR § 301, and are not subject to general jurisdiction in this State.

### B. The Individual Defendants Are Not Subject to New York's Long Arm Statute

New York's long-arm statute provides no basis for jurisdiction here because there is insufficient evidence that the individual defendants had purposeful contacts within the state of New York. Section 302 of the CPLR provides four grounds on which to assert specific personal jurisdiction: (1) transacting business within the state or suppling services in the state; (2) committing a tortious act within the state; (3) committing a tortious act without the state causing

injury to person or property within the state if the individual (i) regularly does business in the state; or (ii) should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) using or possessing real property within the state. *See* CPLR § 302(a). Unlike CPLR § 301, an analysis under § 302(a) focuses on the business contacts in the forum state at the time the cause of action arose rather than when the suit is commenced. *See Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09-CIV-6148 (VM) (MHD), 2012 WL 12932049, at *16 (S.D.N.Y. July 17, 2012). As the individual defendants do not own any property in New York, the only potentially relevant grounds for purposes of this analysis are CPLR §§ 302(a)(1), 302(a)(2) and 302(a)(3). (McKenzie Decl. ¶ 19 ; Gordon Decl. ¶18 ).

### 1. Plaintiff Cannot Establish Jurisdiction Over the Individual Defendants Pursuant to CPLR § 302(a)(1)

Section 302(a)(1) confers jurisdiction over an individual defendant only where the defendant has "purposefully availed" himself of the privilege of conducting activities in New York by engaging in purposeful transactions that bear a substantial nexus to the claims at issue. *See Trisvan v. Heyman*, 305 F. Supp. 3d 381, 393 (E.D.N.Y. 2018). Where, as here, jurisdiction is asserted over a nonresident corporate officer based on corporate activity, the plaintiff must show that the officer was a "primary actor" in the relevant transaction and "exercised some control over the purposeful activity" directed at New York. *Id.* at 393–94 (holding that nonresident corporate officers were not subject to personal jurisdiction where plaintiff failed to allege their personal involvement in the conduct at issue).

The record forecloses any such showing. McKenzie is a United Kingdom resident who has worked remotely from the United Kingdom throughout his employment with WG&S Ltd. He has never resided in New York, owned property in New York, or been employed by a New York entity. (McKenzie Decl. ¶¶ 19–23). Although his responsibilities included oversight of the U.S. business,

he joined WG&S Ltd. on November 13, 2025—approximately three weeks before Plaintiff's termination—and performed his duties pursuant to a United Kingdom-based employment arrangement. (*Id.* ¶¶ 2, 17, 41).

Nor was McKenzie a "primary actor" in the events giving rise to Plaintiff's claims. Prior to joining WG&S Ltd. on November 13, 2025, he had no working relationship with Plaintiff. (McKenzie Decl. ¶¶ 34–36, 41–42). McKenzie was not involved in Plaintiff's hiring, and did not establish Plaintiff's position, duties, compensation, or responsibilities. (*Id.* ¶¶ 46–47). Plaintiff does not allege that he made any complaints or "whistleblowing" reports to McKenzie, and McKenzie was not a decisionmaker with respect to Plaintiff's employment termination. (*Id.* ¶¶ 42, 45–47). His only involvement with Plaintiff in New York was to attend meetings with him in December, including the December 3, 2025 meeting at which Plaintiff was informed that his employment was being terminated. (*Id.* ¶¶ 40, 43).

These facts fall far short of establishing that McKenzie "exercised some control over the purposeful activity" directed at New York or was a "primary actor" in the conduct underlying Plaintiff's claims. *Trisvan*, 305 F. Supp. 3d at 393–94. A single, brief business trip to New York undertaken in a representative corporate capacity, coupled with limited interaction with Plaintiff, does not constitute the transaction of business within the meaning of CPLR § 302(a)(1). Nor can Plaintiff establish jurisdiction merely by relying on McKenzie's corporate title ***with WG&S Ltd.*** or generalized oversight responsibilities, as "control cannot be shown based merely upon a defendant's title or position within the corporation." *Id.* at 395, n.10 (observing that the defendants' positions as chairman and CEO did not, without more, establish that they "exercised control over the transactions at issue or final decision-making authority over all transactions"); *see also Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 336–37 (E.D.N.Y. 2021) (defendant's position in the

corporation was insufficient basis to establish he had personal involvement with alleged acts in question); *Shostack v. Diller*, No. 15–CV–2255 (GBD)(JLC), 2015 WL 5535808, at *6 (S.D.N.Y. Sept. 16, 2015) (finding that the CEOs of corporations did not inherently have personal involvement in the underlying transactions at dispute simply because they were CEOs),

The same reasoning applies to Gordon, who resides in the Bailiwick of Jersey, serves as the non-executive Chairman of the WG&S Holdings Ltd.'s Supervisory Board, a role limited to high-level oversight of the international company. (Gordon Decl. ¶¶ 2, 23, 27). His title alone is insufficient to establish that he was a "primary actor" in the conduct underlying Plaintiff's claims or that he exercised control over the activities at issue; which he did not. *Trisvan*, 305 F. Supp. 3d at 393–95; *see also Grp. One Ltd.*, 523 F. Supp. 3d at 336–37. Indeed, Gordon does not participate in WG&S, Inc's day-to-day operations nor did he direct any of the activities underlying Plaintiff's claims. (Gordon Decl. ¶¶ 27, 29–31). Nor did Gordon supervise Plaintiff, establish Plaintiff's duties, compensation, or reporting structure, or exercise authority over Plaintiff's day-to-day work. (*Id*. ¶¶ 29–31). Gordon was not present at the December 2025 meetings concerning Plaintiff's termination, and was not a decisionmaker with respect to Plaintiff's termination. (*Id*. ¶¶ 37–39). Rather, like McKenzie, Gordon had one New York-based encounter with Plaintiff during Plaintiff's employment. (*Id*. ¶¶ 32).

Given Plaintiff's failure to identify any personal transaction of business by either individual defendant in New York that bears a substantial relationship to the claims asserted in this action, CPLR § 302(a)(1) provides no basis for the exercise of personal jurisdiction.

### 2. Plaintiff Cannot Establish Jurisdiction Over the Individual Defendants Pursuant to CPLR § 302(a)(2)

Personal jurisdiction may exist over nonresidents if they "commit[] a tortious act within the state." CPLR § 302(a)(2). To establish such jurisdiction, however, the acts on which the plaintiff's tort claims are based must have occurred in New York. *Kramer v. Vogl*, 17 N.Y.2d 27, 31 (1966).

Plaintiff does not allege that either individual committed a tortious act in New York within the meaning of CPLR § 302(a)(2). As to McKenzie, the Complaint only alleges that he met with Plaintiff in New York on December 2, 2025, during which meeting Plaintiff allegedly discussed his medical condition and purported need for accommodations. (Compl. ¶ 47). As to Gordon, the Complaint alleges that he attended meetings with Plaintiff in Scotland, criticized Plaintiff's cancellation of a golf outing with customers, exchanged limited communications with Plaintiff thereafter acknowledging his injury, and was later present at a meeting where Plaintiff raised concerns regarding WG&S, Inc.'s Chief Marketing Officer. (Compl. ¶¶ 28, 34–37, 73). Importantly, the Complaint does not allege that either McKenzie or Gordon terminated Plaintiff's employment, nor could it. (McKenzie Decl. ¶ 41–47; Gordon Decl. ¶¶ 37–39). Instead, the Complaint alleges only that "Mr. Casey was informed that WG&S would terminate his employment without cause, effective December 5, 2025." (Compl. ¶¶ 48–49). That allegation says nothing about who made that decision, where was it made, or whether either individual personally engaged in any tortious conduct within New York for purposes of CPLR § 302(a)(2). Importantly, the individual defendants did not. (McKenzie Decl. ¶¶ 41–47; Gordon Decl. ¶¶ 37–39).

Thus, even accepting the allegations of the Complaint as true, they do not establish that either individual defendant personally committed a tortious act in New York. *See Kramer*, 17 N.Y.2d at 31 (holding CPLR § 302(a)(2) requires "that a defendant's act or omission occur within

the State" and rejecting jurisdiction where "everything defendants did was done in Europe"). Accordingly, CPLR § 302(a)(2) provides no basis for personal jurisdiction.

### 3. Plaintiff Cannot Establish Jurisdiction Over the Individual Defendants Pursuant to CPLR § 302(a)(3)

Plaintiff cannot establish specific jurisdiction under CPLR § 302(a)(3), which requires Plaintiff to allege both an injury in New York and that the individual either (i) regularly conducted business or engage in a persistent course of conduct in New York, or (ii) reasonably expected their conduct to have consequences in New York and derive substantial revenue from interstate or international commerce.

As a threshold matter, Plaintiff fails to "adequately allege a tortious act committed by the [individual defendants]." *Landau v. New Horizon Partners, Inc.*, No. 02 CIV.6802 (JGK), 2003 WL 22097989, at *7 (S.D.N.Y. Sept. 8, 2003). As noted above, the Complaint contains only conclusory allegations regarding McKenzie and Gordon and fails to allege facts showing that either personally engaged in actionable discriminatory, retaliatory, or otherwise tortious conduct. Plaintiff therefore fails to satisfy the threshold requirement of CPLR § 302(a)(3).

In any event, even assuming that Plaintiff has adequately alleged a tortious act, jurisdiction still does not lie under § 302(a)(3). The Complaint contains no factual allegations that either McKenzie or Gordon regularly conducts business in New York, engages in a persistent course of conduct in New York, or derives substantial revenue from goods used or services rendered in New York. Nor does Plaintiff allege facts showing that either committed an out-of-state tort while expecting or reasonably foreseeing consequences in New York. To the contrary, the Complaint alleges that both individuals reside overseas (Compl. ¶¶ 12, 15), and contains no factual allegations that either of them individually conducts business in New York, engages in a persistent course of conduct here, or derives substantial revenue from New York activities. Accordingly, Plaintiff has

failed to plead facts sufficient to satisfy either subsection of CPLR § 302(a)(3). Moreover, regardless of what is alleged, the individual defendants did not engage in conduct that would establish jurisdiction under CPLR § 302(a)(3). (McKenzie Decl. ¶¶ 19–26; Gordon Decl. ¶¶ 16–27).

### C. The Exercise of Jurisdiction is not Reasonable and Would Violate Due Process and Fairness Requirement

Even assuming personal jurisdiction existed over the individual defendants, which it does not, the Complaint should still be dismissed because exercising jurisdiction over either of them would violate due process. To determine whether exercising jurisdiction is consistent with the Constitution's due process requirements, Courts must undertake both a "minimum contacts" and "reasonableness" inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Under the "minimum contacts" inquiry, the Court must assess "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.*; *see also Washington*, 326 U.S. at 316. Under the "reasonableness" inquiry, the Court must assess "whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164. Both inquiries fail.

Here, the minimum contacts inquiry fails because, as established above, the individuals have little to no contact with the state of New York and have not purposefully availed themselves of the benefits of New York law. As for the "reasonableness" analysis, courts must evaluate the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.*

Regarding the first factor, the individual defendants will be burdened if required to litigate this case in New York. Neither is a resident of New York, and they rarely travel to New York for business reasons. (McKenzie Decl. ¶ 19–27 ; Gordon Decl. ¶¶ 16–27). Thus, this factor favors the individuals because of the burden they would face in having to travel to and defend this suit in New York. The second and third factors do not weigh in favor of any party; Plaintiff himself does not live in New York, and New York has no special interest in providing effective means of redress for non-residents. (*See* Compl. ¶ 5 ("Plaintiff is an individual residing in Fairfield County in the State of Connecticut.")). In evaluating the fourth factor, courts "generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996). This factor favors the individuals because they did not make the decision to terminate Plaintiff's employment, which is the adverse action underlying Plaintiff's claims. (McKenzie Decl. ¶ 41–47; Gordon Decl. ¶¶ 37–39). Indeed, the Complaint alleges no facts tying them to the challenged conduct, making it unlikely that relevant witnesses or evidence are in New York.

Finally, as to the fifth factor, no public policy interest is served by permitting Plaintiff to require two foreign individuals with no meaningful personal connection to New York to defend a lawsuit here simply because Plaintiff, also a non-resident of New York, chose this forum. That result would run contrary to longstanding jurisdictional principles. As the Supreme Court has stated, the jurisdictional inquiry must focus on "the relationship among the defendant, the forum, and the litigation," not the plaintiff's choice of forum. *Rush v. Savchuk*, 444 U.S. 320, 327 (1980).

Accordingly, the exercise of personal jurisdiction would be unreasonable, and the Complaint should be dismissed as to the individual defendants because Plaintiff has failed to establish that this Court has personal jurisdiction over them consistent with due process.

## CONCLUSION

For the reasons set forth above, Grant McKenzie and Grant Glenn Gordon respectfully request that this Court enter an order dismissing Plaintiff's Complaint against them in its entirety with prejudice, and granting such other and further relief as the Court may deem just and proper.

Dated: August 6, 2026
New York, New York

LITTLER MENDELSON, P.C.
By:*/s/Margaret L. Watson* .
Philip M. Berkowitz, Esq.
Margaret L. Watson, Esq.
Katharine P. Lennox, Esq.
Anat Maytal, Esq
900 Third Avenue
New York, NY 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719
pberkowitz@littler.com
mwatson@littler.com
klennox@littler.com
amaytal@littler.com

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing contains 7,730 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c). The undersigned relied on the word count of the word-processing program used to prepare this document.

Dated: August 6, 2026

*/s/ Margaret L. Watson*
Margaret L. Watson

## CERTIFICATE OF SERVICE

I, Margaret L. Watson, hereby certify that on this 6th day of August 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to any non-registered participants identified on the Notice of Electronic Filing.

Dated: August 6, 2026

*/s/ Margaret L. Watson*
Margaret L. Watson